UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GOTHAM CITY ORTHOPEDICS, LLC,**<br><br>     **Plaintiff,**<br><br>     v.<br><br>**UNITED HEALTHCARE INS. CO., a/k/a UNITEDHEALTH GROUP INC., UNITED HEALTHCARE OF NEW JERSEY, INC., UNITED HEALTHCARE SERVS. INC., UNITED HEALTHCARE SERVS., LLC, NON-NEW JERSEY UNITED HEALTHCARE PLANS 1-10 and JOHN DOES 1-10,**<br><br>     **Defendants.** | Civ. No. 21-11313 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    Gotham City Orthopedics, LLC is a healthcare practice that performed surgeries on seven patients insured by United after receiving pre-approval of the surgeries from United.[1] United paid far less for the surgeries than Gotham City Orthopedics ("Gotham") billed. Gotham City Orthopedics sued United, asserting state-law contract and tort claims. United moves to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). (DE 23.)[2] For the foregoing reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1]    Gotham City Orthopedics sues United Healthcare Insurance Company as well as subsidiaries and to-be-identified defendants. For simplicity, I refer to all defendants collectively as "United."

[2]    Certain citations to the record are abbreviated as follows:

    Am. Compl. = Amended Complaint (DE 15)

    Mot. = United's Brief in Support of its Motion to Dismiss (DE 23-1)

    Opp. = Gotham City Orthopedics' Brief in Opposition to United's Motion to Dismiss (DE 29)

    Reply = United's Reply Brief (DE 32)

I.  **BACKGROUND**

Gotham is a New Jersey medical practice that has visiting privileges at multiple New Jersey hospitals. (Am. Compl. ¶ 14.) It is not, however, a member of United's network of providers, meaning that in relation to United, it is an "out-of-network" provider. (*Id.* ¶ 15.) Because Gotham does not have a preexisting contractual relationship with United, before performing the surgeries it contacted United to obtain "pre-approval" for the surgeries.[3] (*Id.* ¶ 16–17, 23, 35, 47, 59, 71, 83, 95.) After performing the surgeries, Gotham billed United, and United paid far less than was billed: on average, 22% of the requested rate. (*Id.* ¶ 4.)

Gotham alleges that the pre-approvals obligated United to reimburse it for its services at "out-of-network rates."[4] (*Id.* ¶ 23, 35, 47, 59, 71, 83, 95.) The four remaining counts pursue repayment under four different theories.[5] Count 1 alleges that United breached an implied-in-fact contract created by the pre-approval. (*Id.* ¶ 115–24.) Count 2 alleges that even if United did not breach the terms of the contract, it breached the implied covenant of good faith and fair dealing. (*Id.* ¶ 125–29.) Count 3 alleges that even if a contract was not formed, United should be held liable under a promissory estoppel theory because Gotham relied to its detriment on United's promise of payment. (*Id.* ¶ 130–35.) Finally, Count 5 alleges even if no contract or quasi-contract was formed, United should be held liable for the tort of negligent misrepresentation because it misrepresented its payment policy, causing harm to Gotham. (*Id.* 143–48.)

---

[3]  Gotham claims that the surgeries were "medically necessary" and that it was required to perform them under state law, regardless of whether it would be reimbursed. (Am. Compl. ¶ 16–17, 102.) At this point at least, neither of those allegations are relevant to the core issue of this case which is whether United incurred an obligation to pay Gotham City Orthopedics for the surgery.

[4]  Separately, Gotham at one point claimed that the law obligates United to reimburse 100% of Gotham's "usual, customary, and reasonable" charges. (*Id.* ¶ 103.) This claim is not relevant because the count has been dropped.

[5]  Gotham has dropped its quantum merit claim (Count 4) and its claims based on New Jersey state medical regulations (Count 6). (Opp. at 23, 25.)

Gotham filed this case in the Superior Court of New Jersey, Civil Division, Passaic County on April 13, 2021. (DE 1, Ex. A.) On May 17, 2021 United removed the case to this court on the basis of both diversity and federal-question jurisdiction. (DE 1.) On September 21, 2021, United moved to dismiss the complaint. (DE 23.) Gotham filed a brief in opposition (DE 29) and United filed a reply (DE 32.) This motion is fully briefed and ripe for decision.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.   DISCUSSION

United moves to dismiss on the grounds that (1) Gotham's claims are preempted by ERISA and (2) each claim is insufficiently alleged. (Mot. at 1–2.) I first find that Gotham's claims are not preempted by ERISA. I then examine the four remaining Counts and find that Gotham has stated a claim for all but the claim of breach of the implied covenant of good faith and fair dealing.

### A. Preemption

United argues that ERISA preempts Gotham's claims, all of which are asserted under state law. (Mot. at 8.) At this stage, dismissal based on preemption "is appropriate . . . only when preemption is manifest in the complaint itself." *Lupian v. Joseph Cory Holdings Co.*, 905 F.3d 127, 130–31 (3d

3

Cir. 2018) (cleaned up). Here, it is clear from the pleadings and controlling Third Circuit precedent that none of Gotham's claims are facially preempted by ERISA.

ERISA "provide[s] a uniform regulatory regime over employee benefit plans," including health insurance plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). These regulations are meant primarily to protect plan participants and beneficiaries, *i.e.,* employees eligible for benefits and their designated family members who also receive benefits. *Plastic Surgery Ctr., PA v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020). To that end, ERISA contains "a broad express preemption provision, which 'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Id.* at 226 (quoting 29 U.S.C. § 1144(a)). For ERISA preemption purposes, "state laws" includes both state statutes and common law causes of action. *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014). The Supreme Court has recognized that the construction of "relate to" must be limited in some way, otherwise "pre-emption would never run its course." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). The Court has thus defined laws that relate to ERISA plans as those that either have a "reference to" or "connection with" such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).[6] In short,

---

[6] In its most recent opinion on this matter, the Third Circuit defined these two factors as follows

> The first applies where a State's law acts immediately and exclusively upon ERISA plans … or where the existence of ERISA plans is essential to the law's operation. The second covers state laws that govern … a central matter of plan administration or interfere with nationally uniform plan administration, and those state laws that have acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." The latter inquiry is guided by the objectives of the ERISA statute, which provide a blueprint for the scope of the state law that Congress understood would survive.

*Plastic Surgery Ctr.*, 967 F.3d at 226–27 (cleaned up).

more than a simple "but for" relationship is required for a state law to "relate to" an ERISA plan.

United, citing mostly outdated precedents, argues that Gotham's claims relate to the patients' ERISA plans because "the trial court's inquiry would be directed to the plan."[7] (Mot. at 8 (citing *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992)).) I disagree.

More recent cases in this Circuit, most importantly *Plastic Surgery Center*, have interpreted "relate to" more narrowly and held that ERISA preempts only state common-law claims "that involve construction of the plan or require interpreting the plan's terms." 967 F.3d at 230 (cleaned up). In contrast, state law claims seeking to enforce "obligations independent of the plan" and requiring "only a cursory examination of the plan" are not preempted. *Id.* at 231, 233 (citation omitted).

In *Plastic Surgery Center*, the Third Circuit applied this test to claims, like the ones here, brought by an out-of-network provider against an insurer. The provider contacted the insurer to confirm that it would cover two procedures for patients. *Id.* at 223–24. The insurer allegedly stated that it would pay "a reasonable amount for those services according to the terms of the [patient's] Plan" or pay at "highest in[-]network level." *Id.* at 224. After the procedures, the insurer paid only a fraction of the cost. *Id.* The provider brought claims under New Jersey law for breach of contract, promissory estoppel, and unjust enrichment. *Id. Plastic Surgery Center* held that the breach of contract and promissory estoppel claims were not preempted. The Court explained that those claims arose out of a relationship between the provider and the insurer, and were thus sufficiently independent from any plan the patient had. *Id.* at 231. Indeed, the claims "arose precisely because there

---

[7]   It is true that another court in this district dismissed a nearly identical claim by Gotham against a different insurer. *Gotham City Orthopedics, LLC v. Aetna Inc.*, Civ. A. No. 20-14915-SDW-LDW, 2021 WL 1541069 (D.N.J. 2021). That opinion, however, was written without reference to the controlling precedent of *Plastic Surgery Ctr.* and I therefore do not find it persuasive.

5

was no coverage under the plans for services performed by an out-of-network provider." *Id.* The Court further explained that the fact that the provider and insurer agreed to payment rates with reference to the patient's plans did not trigger preemption. *Id.* at 233. This was so because "determinations of in-network payment rates" would not "require careful study of the intricacies of the plans" but simply "reviewing the fee schedule attached to [the insurer's] in-network provider agreements." *Id.* at 233. Finally, the Court noted that the provider, as neither a plan participant nor beneficiary, was not included in ERISA's civil enforcement scheme. *Id.* at 236.

By that reasoning, Gotham's breach of contract and promissory estoppel claims are not preempted. At their simplest, those claims allege that Gotham provided services which United, despite its representations, did not fully pay for. As in *Plastic Surgery Center*, these claims would not require an intricate look at the patients' United plans because the alleged payment agreements did not rely in any depth on the provisions of the plans.

But this case, United argues, is different. In an attempt to demonstrate that Gotham's claims relate to the ERISA plans, United quotes every reference to the patients' plans in the amended complaint. (Reply at 3–4.) United then attempts to distinguish *Plastic Surgery Center* by arguing that the claims in that case were not preempted specifically because they were not covered under the insurance plans, whereas Gotham pleads that the claims at issue should have been covered under the patients' plans. (*Id.* at 5–6.)[8] Even if Gotham believed that the surgeries should have been covered under the patients' plans, however, it covered its bases by contacting United and obtaining pre-approval for the surgeries. That pre-approval, Gotham alleges, gives an independent legal duty that obliges United to pay, regardless of the terms of the patients' plans. (Opp. at 10–11.) Although it is true that the alleged independent agreement referred to "out-of-network rates" (*e.g.*, Am. Compl. ¶ 23), which

---

[8]   United also unsuccessfully attempts to distinguish my decision in a very similar case, *MedWell LLC v. Cigna Corporation*, 2021 WL 2010582 (D.N.J. May 19, 2021).

may be defined in the patients' plans, applying such "out-of-network rates" would require only a "cursory examination" of the plan, not a detailed construction of its terms. *Plastic Surgery Ctr.*, 967 F.3d at 233.

The patients' plan agreements thus are not the source of the rights that Gotham seeks to enforce here. The alleged obligation between Gotham and United was created when United represented or implied that it would cover the surgeries that Gotham performed. There is nothing in the Amended Complaint to suggest that Gotham agreed to incorporate the terms of United's agreements *with patients* or be treated like an in-network provider under the plan. My analysis in *MedWell*, applies equally well to this case: "this claim is not a straight in-network claim as between insurer and insured, based on the plan or policy of insurance. Rather, it is an independent claim as between the provider and the insurer. Schematically, Contract A is between X and Y, but Y is using the provisions of Contract B, between Y and Z, as a defense." *MedWell, LLC v. Cigna Corp.*, No. CV2010627KMESK, 2021 WL 2010582, at *8 (D.N.J. May 19, 2021). As discussed below, whatever contractual, quasi-contractual, or tortious liability may exist in this case arises from the pre-approval discussion between Gotham and United, not because of anything in the patients' insurance plans. Following *Plastic Surgery Center,* I thus find that the contractual and promissory estoppel claims are not preempted by ERISA. Similarly, following my reasoning in *MedWell,* I find that the breach of the implied covenant of good faith is not preempted by ERISA. 2021 WL 2010582, at *8. Finally, the negligent misrepresentation claim, because it is based on the same facts as the other claims and does not require more than cursory analysis of the patients' plans, is also not preempted. *See McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996).

### B. Failure to State a Claim

Having determined that Gotham's claims are not preempted by ERISA, I now examine each of the four remaining Counts individually to determine whether Gotham has sufficiently stated a claim. The motion to dismiss is

denied as to breach of implied contract, promissory estoppel, and negligent misrepresentation, but granted as to the claim for breach of the implied covenant of good faith and fair dealing.

### 1. Breach of Contract

A breach of contract claim requires a plaintiff to plead that a valid contract existed which a defendant breached. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citations omitted). A valid contract can exist "in circumstances in which the agreement and promise have not been verbally expressed. The agreement is rather inferred from the conduct of the parties." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (citation omitted). Gotham alleges that the parties' "course of conduct," specifically the pre-approval of the surgeries, created a contract in which United would pay Gotham for the surgeries performed on the United-insured patients, and that United breached that contract by failing to pay as agreed. (Am. Compl., Count 1.)

Determining whether an implied contract exists is a factual question. *Troy v. Rutgers*, 774 A.2d 476, 483 (N.J. 2001). Courts in similar cases have held that allegations that an out-of-network provider and an insurer dealt repeatedly with each other, and the provider would obtain preauthorization plausibly allege an implied contract. *E.g., Small v. Oxford Health Ins., Inc.*, Civ. No. 18-13120, 2019 WL 851355, at *5 (D.N.J. Feb. 21, 2019); *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 WL 6445593, at *5 (D.N.J. Dec. 10, 2018); *E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, Civ. No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018). These courts reasoned that preauthorization from the insurer plausibly manifests to the provider that the insurer will reimburse the provider for the costs of the service. *Id.* When the insurer later refuses to do so, the insurer has breached that implied promise. *Id.*

It is true, as United points out, that this case differs from *MedWell* because there is no allegation that the parties had a long-running relationship. Still, the allegation that Gotham called United, and the United representative

agreed that Gotham would be reimbursed for the surgeries is sufficient to imply a contract. *MedWell*, 2021 WL 2010582, at *3. For a contract to be formed, of course, the terms must be sufficiently clear, and at least one court has held a contract allegation to be insufficient because it "[did] not describe the preauthorization's contents whatsoever, including, for example, the extent and scope of covered treatment." *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 19-20483, 2020 WL 5105234, at *5 (D.N.J. Aug. 31, 2020). But the majority view, in keeping with New Jersey Supreme Court precedent, reasons that the precise terms of the obligation are factual matters better fleshed out in discovery. *E.g.*, *Comprehensive Spine Care*, 2018 WL 6445593, at *5.

This complaint's allegations about preauthorization allow an inference of the mutuality of obligation necessary for contract formation that is sufficient to survive a motion to dismiss. *See id.* United's motion to dismiss Count 1 will thus be DENIED.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

Gotham alleges that United not only breached the terms of the contract, but also the implied covenant of good faith and fair dealing. (Am. Compl., Count 2.) Every contract is deemed to include that implied covenant. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). But a complaint must allege more than a simple breach of contract. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 417 (D.N.J. 2021). Gotham, however, has made no allegations that go beyond a simple breach of contract and suggest bad faith.

In *MedWell,* the insurer's audit procedures, as alleged, were "Kafkaesque," and the insurer had allegedly attempted to unfairly strongarm the plaintiff, irrespective of any violation of the substantive terms of their contract. *MedWell*, 2021 WL 2010582, at *4. In contrast, nowhere in Gotham's

9

Amended Complaint does Gotham allege that United did anything more than simply not pay what it should have paid; that is, allegedly breach the substantive terms of the implied contract.[9] This is a straightforward case in which the defendant allegedly failed to pay, which is not sufficient to state a claim for a breach of the covenant of good faith and fair dealing. *Cf. Durr*, 516 F. Supp. at 417.

United's motion to dismiss Count 2 will thus be GRANTED.

### 3. Promissory Estoppel

Gotham alleges a claim for promissory estoppel. (Am. Compl., Count 3.) Promissory estoppel requires, among other things, "a clear and definite promise." *Toll Bros., Inc. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008). United argues that the claim fails because Gotham does not allege a clear and definite promise. (Mot. at 18–21.)

This argument is not persuasive. Courts have held specifically that a preauthorization can constitute or contain a clear and definite promise. *Comprehensive Spine Care*, 2018 WL 6445593, at *5; *E. Coast*, 2018 WL 3062907, at *3; *MedWell*, 2021 WL 2010582, at *5. I find that Gotham has properly alleged that United made a sufficiently clear and definite promise to reimburse Gotham at "out-of-network rates" for the surgeries. Whether that turns out to be true must await discovery, but it has been alleged.

United's motion to dismiss Count 3 will thus be DENIED.

### 4. Negligent Misrepresentation

Finally, Gotham properly alleges that United is liable for the tort of negligent misrepresentation. (Am. Compl., Count 5.) To state a claim for

---

[9] In its brief in opposition Gotham primarily argues that breach of the implied covenant can be properly pled in the alternative. (Opp. at 18-21.) This is true, and I would not dismiss such a claim merely because it is redundant or inconsistent. The fact remains, however, that to properly state a claim Gotham must allege facts to show that United acted in bad faith, in some manner that goes beyond an ordinary contractual breach. *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006). Gotham does not do so.

negligent misrepresentation, a plaintiff must allege "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *11 (D.N.J. Mar. 6, 2012). United argues that this claim must fail because Gotham has not identified a false statement. (Mot. at 22–23.) I find, however, that Gotham has plausibly alleged, in the alternative to its contract and promissory estoppel claims, that the pre-approval conversations included false statements that it relied upon. The Amended Complaint alleges that United's representatives told Gotham that it was entitled to reimbursement for the surgeries at "out-of-network rates" and that this statement was a misrepresentation. (Am. Compl. ¶ 146.) At this stage, that allegation is sufficient.

      United's motion to dismiss Count 5 will thus be DENIED.

* * *

      To sum up: none of Gotham's remaining claims are preempted by ERISA and Gotham has stated a claim for all of its Counts except for Count 2, breach of the implied covenant of good faith and fair dealing.

## IV. CONCLUSION

      For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The motion is granted with regard to Counts 2, 4, and 6 and denied with regard to Counts 1, 3, and 5.

      A separate order will issue.

Dated: January 12, 2022

                                             /s/ Kevin McNulty

                                        **Kevin McNulty**
                                        **United States District Judge**